# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| MENASHA PACKAGING COMPANY, LLC, <br><br> Plaintiff, <br><br> v. <br><br> PRATT INDUSTRIES, INC., PRATT INDUSTRIES (USA), INC., RENE CORDERO, THOMAS EVANS and STEVEN STILES, <br><br> Defendants. | Civ. Action No. 17-0075 <br><br><br><br><br> **OPINION** |

**John Michael Vazquez, U.S.D.J.**

## I.    INTRODUCTION

This matter comes before the Court on Plaintiff Menasha Packaging Company, LLC's ("Menasha" or "Plaintiff") motion for a preliminary injunction and expedited discovery.[1] D.E. 4. Defendants Rene Cordero, Thomas Evans and Steven Stiles (the "Individual Defendants") along with Pratt Industries, Inc. and Pratt Industries (USA), Inc. ("Pratt Defendants")[2] (collectively,

---

[1] The Court filed an Order on February 7, 2017 addressing the motion for expedited discovery. D.E. 37.  This Opinion only addresses the motion for a preliminary injunction.

[2] The Pratt Defendants filed a motion to dismiss, alleging that this Court does not have personal jurisdiction over them. D.E. 32.  Based on the Court's preliminary review of the issue, it appears that the Pratt Defendants have made a colorable claim regarding personal jurisdiction.  As a result, this Opinion only applies to Menasha and the Individual Defendants.

"Defendants") opposed this motion.[3]  The Individual Defendants used to work for Plaintiff and are currently employed by Pratt, a business competitor of Plaintiff's.  This matter concerns whether the Individual Defendant's work with Pratt, in connection with a particular customer, violates their restrictive covenants with Plaintiff. The Court has reviewed the parties' submissions and held oral argument on February 6, 2017.  For the reasons that follow, the Court grants Plaintiff's motion for a preliminary injunction.

## II.    BACKGROUND

### a.  Facts

Introduction

"Menasha is a leading designer and manufacturer of packaging and retail merchandising display products and provider of related supply chain services."  Complaint ("Compl.). ¶ 11. Menasha's customers include "large consumer packaged goods customers, most of which pursue large, multi-year contracts through a Request for Proposal ("RFP") process."  *Id.* ¶ 6.  Defendant Pratt Industries, Inc., is a Delaware corporation that competes directly with Plaintiff.  *Id.* ¶ 2.

One of Menasha's customers, Mondelez International Inc. ("Mondelez"), has a contract with Menasha that runs through 2017.  *Id.* ¶ 13.  Pratt does not have a contract directly with Mondelez but has worked for Mondelez as a sub-contractor.  As discussed further below, Mondelez is at the center of the current dispute.

Menasha employs an account team that works on-site with Mondelez, to "manage specific projects and the overall customer relationship."  *Id.* ¶ 14.  The Individual Defendants

---

[3] Plaintiff's brief in support of its motion for a preliminary injunction and expedited discovery will be referred to hereinafter as "Pl. Br." (D.E. 4), Defendants' opposition to Plaintiff's motion will be referred to hereinafter as "Def. Opp'n" (D.E. 33), and Plaintiff's reply brief in support of its motion will be referred to hereinafter as "Pl. R.Br." (D.E. 35).

worked on the Mondelez account team for Plaintiff: Defendant Evans was a Key Account Manager, Defendant Cordero was a Category Project Manager, and Defendant Stiles was an Account Manager. *Id.* ¶¶ 18, 19, 20. All three Individual Defendants "were responsible for the re-design of existing Menasha packaging for [Mondelez] and an evaluation of the cost savings associated with the re-designs." *Id.* ¶ 22. Defendant Evans was "the crucial liaison between [Mondelez] and the Menasha personnel who worked on [Mondelez's] behalf." Dugan Decl. ¶ 6. All three Individual Defendants "worked on site with [Mondelez] and had weekly product production calls with [Mondelez]." Dugan Decl. ¶ 7. In those capacities, the Individual Defendants "had unfettered access to … confidential, proprietary, and valuable information about Menasha's business." Compl. ¶ 17.

The Restrictive Covenants

In January 2012, Menasha purchased the assets of the Strive Group ("Strive" or "Strive Group"). *Id.* ¶ 32. Prior to this sale, in 2011, the Individual Defendants signed employment agreements with Strive Group. *Id.* ¶¶ 32, 33. These agreements contained non-solicitation and confidentiality provisions. The non-solicitation provisions prohibit the Individual Defendants from "directly or indirectly solicit[ing], service[ing], hav[ing] contact with, or divert[ing]" any customer of Menasha for a period of 18 months following termination of employment. D.E. 4-3 ¶ 4(b). The confidentiality provisions indicate that the Individual Defendants "will keep secret, confidential, and inviolate and not disclose, either during or after [their] employment by [Menasha], any proprietary or confidential information or business secret of [Menasha]." *Id.* ¶ 3.

In conjunction with Menasha's acquisition of Strive Group, it executed a purchase agreement. Fogarty Decl. ¶ 3. Schedule 1(a)(v) of the purchase agreement purported to transfer contracts from Strive Group to Menasha. *Id.* ¶ 5. The transferred contracts included all

3

agreements entered into with Strive Group's employees since January, 2008, and specifically references the employment agreement "between [Strive] and Tom Evans dated July 1, 2011." *Id.*, Ex. A.  Menasha alleges that these provisions assigned the Individual Defendants' non-solicitation and confidentiality agreements with Strive Group to Menasha.  Compl. ¶ 32.

In June 2016, the Individual Defendants all agreed to additional confidentiality provisions with Menasha.  *Id.* ¶ 30.  The agreements define confidential material and state that employees shall not discuss Menasha's confidential material "with anyone not authorized to receive such material either during [their] employment or after [their] employment has ended."  *Id.* Additionally, the agreement requires employees, upon the termination of their employment with Menasha, to return all confidential information in their possession to Menasha.  *Id.*

The Present Dispute

The contract between Plaintiff and Mondelez required Plaintiff to continually cut costs as part of a Continuous Improvement Program ("CIP").  *Id.* ¶ 21.  The CIP also provided that if Plaintiff did not cut costs to a certain threshold, it was required to pay Mondelez the difference. *Id.* ¶ 28.  Plaintiff alleges that the Individual Defendants had numerous meetings throughout the course of 2016 to produce cost-saving packages for Mondelez.  *Id.* ¶¶ 22-24.  However, Evans and Stiles failed to present the CIP work to Mondelez and allegedly "told [Mondelez] that Menasha would not be making any proposals to cut costs, and that [Menasha] simply preferred to issue a check to the customer at the end of the year."  *Id.* ¶¶ 25-27.  Thus, Plaintiff alleges that "Menasha suffered a loss of goodwill from [Mondelez] because its work product was never presented."  *Id.* ¶ 29.  Defendants claim that Cordero did not work on the CIP and Evans only worked on it during the earlier stages.  Defendants do admit, however, that Stiles worked on the

project and did not present the CIP proposal to Mondelez. Stiles, moreover, did not inform Menasha that he was not providing the CIP information to Mondelez.

In approximately April 2016, Evans and Pratt[4] began communicating about his working for Pratt. Sometime thereafter, Cordero and Stiles also started similar discussions. Menasha was unaware of the employment negotiations. Pratt indicates that in July or August 2016, it decided to hire the Individual Defendants. During a later review, Menasha discovered an email dated August 26, 2016 on Cordero's laptop; the email contained an attachment entitled, "2016 Pratt Benefits Guide.pdf." Pratt claims that details of the Individual Defendants' employment with Pratt were not finalized until November 2016.

In September 2016, Mondelez issued a RFP to interested vendors for a contract covering 2018 through 2020, which Plaintiffs allege is valued at "tens of millions of dollars per year." *Id.* ¶ 35. The RFP process included two distinct "rounds". *Id.* ¶¶ 35,36. The Individual Defendants were employees of Menasha when Menasha made its first round submission in early November 2016. *Id.* ¶¶ 38,39. The second round was scheduled for December 8, 2016. *Id.* ¶ 39.

Prior to round two, on November 16, 2016, Evans resigned from Menasha. *Id.* ¶ 40. He also purported to resign on behalf of Cordero and Stiles. *Id.* Before leaving Menasha, each of the Individual Defendants "plugged removable storage devices into their Menasha laptops on or after November 16, 2016." *Id.* ¶ 43. Plaintiff alleges that there was "no legitimate business

---

[4] As discussed in note 2, *supra*, the named Pratt Defendants contest personal jurisdiction. According to counsel for the Pratt Defendants, Defendant Pratt Industries is the parent of subsidiary company Pratt Corrugated Holdings, Inc. Pratt Corrugated Holdings is, in turn, parent of subsidiary Pratt (Target Container), Inc., which runs a division named Pratt Displays. According to counsel for the Pratt Defendants, Pratt (Target Container) is the actual employer of the Individual Defendants. Based on the current record, it is not clear which of the Pratt entities the Individual Defendants communicated with concerning their employment. As a result, the Opinion refers to the Pratt entities collectively as "Pratt" although there are apparently several Pratt entities.

reason" for the Individual Defendants to download this information, and that their actions were in violation of their confidentiality and non-solicitation agreements. *Id.* ¶ 52. Menasha conducted a forensic review of the Individual Defendants' laptop computers but was unable to determine precisely what information was downloaded. In addition, on November 21 and 22, 2016, Menasha's vice president of human resources emailed to Stiles and Cordero copies of their 2011 non-solicitation and confidentiality agreement. D.E. 35-2 & 35-3. The email stated that Menasha takes the agreement "very seriously and reserves the right to take all appropriate actions toward enforcement of your agreement with us." *Id.* The Individual Defendants' final day at Menasha was November 22, 2016. Compl. ¶ 40. Shortly thereafter, all three Individual Defendants began working with Pratt. *Id.*

Menasha and Pratt were two of the four companies that advanced to "Round Two" of the RFP process with Mondelez. *Id.* ¶¶ 39, 40. "On November 30, 2016, four days after [Evans] left Menasha, [he] was seen meeting with [Mondelez] on Pratt's behalf, as part of Round 2 of the RFP." *Id.* ¶ 42. The Pratt Defendants acknowledged that if the non-solicitation provision is enforceable, Evan's meeting with Mondelez would be a violation. The Pratt Defendants likewise admitted that Evans was at the meeting to help Pratt's relationship with Mondelez.

The same day, November 30, 2016, Menasha "sent letters to the Individual Defendants, with copies to Pratt, reminding them of their obligations to Menasha, demanding a return of any Menasha confidential information in their possession … and requesting assurances that they [would] abide by their contractual agreements and common law duties." Pl. Br. at 9-10. Upon receiving their non-solicitation agreements from Menasha, Defendants Stiles and Cordero claimed to have been "utterly shocked," despite the fact that they had requested and been

provided copies of the same agreements shortly before their departure from Menasha.  *See* Stiles

Decl. ¶ 14, Cordero Decl. ¶ 6; D.E. 35-2.

On December 7, 2016, Counsel for Pratt wrote Menasha a letter in response.  *See* Brow

Decl., Ex. 3.  Menasha responded approximately one week later, by a letter dated December 13,

2016.  *Id.*, Ex. 4.  Pratt contends that due to "the holiday season," it "did not have a full

opportunity to investigate the matter and respond before Plaintiff initiated the instant action."

Def. Opp'n at 18.

Pratt claims that as of December 13, 2016, Evans has not done any work regarding

Mondelez.  Connors Decl. ¶ 22.  Pratt further asserts that Cordero and Stiles have never

performed any work for Pratt concerning Mondelez.  *Id.* ¶ 21.  Pratt indicates that it has

voluntarily isolated the Individual Defendants from Mondelez matters while the current motion

is pending.  Pratt further noted, however, that it would only do so until approximately February

13, 2017.  Pratt added that if the Individual Defendants are enjoined from work concerning

Mondelez, Pratt may not retain them as employees.

### b.  **Procedural History**

On January 5, 2017, Plaintiff filed a nine-count complaint asserting (1) Violation of

Federal Defend Trade Secrets Act, (2) Violation of New Jersey Uniform Trade Secrets Act, (3)

Breach of Contract – Confidentiality Agreements, (4) Breach of Contract – Non-Solicitation

Agreements, (5) Breach of Fiduciary Duty, (6) Tortious Interference with Customer

Relationships, (7) Tortious Interference with Employee Relationship, (8) Unfair Competition,

and (9) Civil Conspiracy.[5]  D.E. 1.  The following day, on January 6, 2017, Plaintiff filed a

---

[5] Counts (1) through (5) are asserted against the Individual Defendants only.  Counts (6) through
(9) are asserted against the Individual Defendants and the Pratt Defendants.

motion for a preliminary injunction and expedited discovery. D.E. 4. After the Defendants were served, the Court held a telephone conference with the parties on January 23, 2017. D.E. 29. Following the call, the Court set a briefing schedule. D.E. 30. On January 30, 2017, Defendant Pratt filed a motion to dismiss and all Defendants filed an opposition to the pending motion for injunctive relief and expedited discovery. D.E. 32 & 33. Plaintiff then filed a reply. D.E. 35.

The Court held oral argument on February 6, 2017. D.E. 36. The following day, February 7, the Court entered an order granting Plaintiff's limited expedited discovery. D.E. 37. Subsequently, the parties submitted additional briefing as to the issue of irreparable harm.[6]

### III. LEGAL STANDARD

A preliminary injunction is "an extraordinary remedy, which should be granted only in limited circumstances." *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 800 (3d Cir. 1989) (internal quotation marks omitted). Nonetheless, a trial court's decision to issue a preliminary injunction is discretionary. *EBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

A party seeking a preliminary injunction must demonstrate: "(1) a likelihood of success on the merits; (2) that it will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief." *Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004). The Third Circuit "has placed particular weight on the probability of irreparable harm and the likelihood of success on the merits." *Apollo Techs. Corp. v. Centrosphere Indus. Corp.*, 805 F. Supp. 1157, 1191 (D.N.J. 1992). Thus, "[a] failure to demonstrate either of these

---

[6] Plaintiffs' supplemental brief in support of its motion for a preliminary injunction and expedited discovery will be referred to hereinafter as "Pl. Supp. Br." (D.E. 38), Defendant's supplemental brief in opposition to Plaintiffs' motion will be referred to hereinafter as "Def. Supp. Br." (D.E. 39).

elements 'must necessarily result in the denial of a preliminary injunction.'" *Ortho Biotech Prods., L.P. v. Amgen Inc.*, No. 05-4850, 2006 WL 3392939, at *7 (D.N.J. Nov. 21, 2006) (quoting *Instant Air Freight Co.*, 882 F.2d at 800).

## IV.   DISCUSSION

Likelihood of Success on the Merits

In order to show a likelihood of success on the merits, the moving party must "make[] a showing of a reasonable probability, not the certainty, of success on the merits." *Apollo Techs. Corp.*, 805 F. Supp. at 1191.  While Plaintiff's Complaint alleges nine counts, the pleading boils down to two related issues: first, whether Defendants violated the confidentiality provisions as to any of Menasha's trade secrets or confidential information; and second, whether the Individual Defendants violated their non-solicitation provisions.   Both the confidentiality and non-solicitation provisions are found in the 2011 agreements between the Individual Defendants and Strive Group and there is an additional confidentiality provision in the June 2016 agreements with Menasha.  *See* D.E. 4-4, 4-5, 4-6.  As to the trade secret/confidential information issue, the Court has ordered limited discovery.  *See* D.E. 37.  The Court's ruling as to injunctive relief concerning such information will occur after discovery is taken.  As a result, the following analysis pertains solely to allegations concerning the non-solicitation provisions.

Before the Court can analyze these agreements, it must consider what law to apply. Paragraph 10 of the 2011 agreement provides that it "shall be governed by, and construed under the law of the State of Illinois."  D.E. 4-5.  Therefore, this Court will apply Illinois law to any claims which arise from the 2011 agreement.[7]

---

[7] The Court notes that the law of New Jersey is substantially the same as Illinois law on this issue, and therefore the analysis would not be different if the Court applied the law of New Jersey.

In assessing whether Plaintiff has demonstrated a reasonable probability that the Individual Defendants violated their non-solicitation provisions, the Court must examine whether Plaintiff can demonstrate a breach of contract under Illinois law. "To state a breach of contract claim under Illinois law, [plaintiff] must allege (1) the existence of a valid and enforceable contract; (2) the plaintiff's performance of the contract; (3) the defendant's breach of the contract; and (4) resulting injury." *Covenant Aviation Sec., LLC v. Berry*, 15 F. Supp. 3d 813, 819-20 (N.D. Ill. 2014). Defendants have raised two arguments regarding the non-solicitation provision: (1) Menasha has not shown that there was a valid assignment of the 2011 agreements from Strive; and (2) the non-solicitation provisions are unenforceable.

As to the assignment from Strive to Menasha, Defendants argue that "Plaintiff has not met its burden of establishing standing to enforce the 2011 Strive Group Agreements." Def. Opp'n at 21. Defendants contend that under Illinois law Plaintiff must provide "record evidence" to establish a valid assignment. *Id.* Since Plaintiff has only alleged that it "purchased the assets of Strive Group," Plaintiff cannot demonstrate standing to enforce the 2011 agreements according to Defendants. *Id.* at 22-23.

Plaintiff responds that when it purchased Strive, "the transaction contemplated that the non-solicitation and confidentiality agreements from [the Individual Defendants] would be transferred to Menasha as part of the transaction." Pl. R.Br. at 3. Under Illinois law, Plaintiff argues, it is entitled to enforce the agreements of its predecessor. *Id.* at 4. Thus, Plaintiff contends it has standing to enforce the 2011 agreements.

The Court finds that Plaintiff has demonstrated a likelihood of success in demonstrating that the 2011 agreements were properly assigned from Strive to Menasha. Under Illinois law, when a purchase agreement executed with the sale of a business explicitly transfers employment

10

agreements, the employment agreements are properly assigned in conjunction with the sale. *Decker, Berta & Co., Ltd. v. Berta*, 587 N.E.2d 72, 75-76 (Ill. App. Ct. 1992). Additionally, "where an employment contract is silent on [assignability] … courts generally find that an acquiring corporation can enforce the acquired company's restrictive covenants." *Unisource Worldwide, Inc. v. Carrara*, 244 F. Supp. 2d 977, 982 (C.D. Ill. 2003). Thus, "[u]pon the sale of a business, a restrictive covenant made in connection with such sale is assignable without express words to that effect, and passes as an incident of the business sold, even though not specifically assigned." *Hexacomb Corp. v. GTW Enters., Inc.*, 875 F. Supp. 457, 464 (N.D. Ill. 1993).

Here, Plaintiff has put forth evidence that in January 2012, it signed a purchase agreement to buy the assets of Strive Group. *See* Fogarty Decl. ¶ 3, Ex. A. The purchase agreement specifically transfers the employment agreements to Menasha, and explicitly refers to the "Employment Agreement between the Seller and Tom Evans dated July 1, 2011." *Id.* This evidence, combined with the presumption that a business acquisition includes the transfer of restrictive covenants, create a "reasonable probability" that Plaintiff will succeed in showing a valid assignment. *See Apollo Techs. Corp.*, 805 F. Supp. at 1191.

Defendants next argue that the non-solicitation provisions are "unreasonable, void, and unenforceable." Def. Opp'n at 23. They allege that the scope of the provision "is not limited to customers with whom the Individual Defendants had contact [with] during their employment with Menasha." *Id.* at 24. The lack of limitation to those customers with whom the Individual Defendants worked, argues Defendants, "is an unreasonable and oppressive restraint on trade." *Id.* at 25.

11

Plaintiff argues that the agreements "are enforceable as reasonable restraints of trade." Pl. R.Br. at 5. The agreements are limited to current customers of the Individual Defendants that the Defendants were involved with while at Menasha. *Id*. In its briefs, and during oral argument, Plaintiff stated that they were only seeking to apply the non-solicitation provision to one customer – Mondelez. *Id*. Further, Plaintiff contends that "to the extent the agreements veer over the line of reasonableness … Illinois [law] authorize[s] the Court to modify or 'blue pencil' them in the fashioning of injunctive relief." *Id*.

Generally, Illinois "[c]ourts do not favor restrictive covenants entered into between an employer and employee." *Trailer Leasing Co. v. Assocs. Commercial Corp.*, No. 96-2305, 1996 WL 392135, at *1 (N.D. Ill. July 10, 1996). Thus, restrictive covenants are carefully scrutinized. *Id*. Additionally, at its discretion, a court may "modify or 'blue pencil' an unreasonable agreement in order to make it reasonable." *Id; see also Brown & Brown, Inc. v. Ali*, 592 F. Supp. 2d 1009, 1046 (N.D. Ill. 2009) ("Judicial reformation of an unenforceable restrictive covenant is permissible under Illinois law, and a court may choose to modify an overly broad restrictive covenant rather than invalidate it outright.").

Under Illinois Law, "a restrictive covenant will be upheld if it contains a reasonable restraint and the agreement is supported by consideration."[8] *Reliable Fire Equip. Co. v. Arredondo*, 965 N.E.2d 393, 396 (Ill. 2011). A covenant is reasonable only if it: "(1) is no

---

[8] Defendants do not raise the issue of valid consideration. Moreover, appropriate consideration for a restrictive covenant is relatively broad under Illinois law and includes "continued employment." *Arthur J. Gallagher & Co. v. Roi*, No. 14-0786, 2015 WL 1143167, at *11 (Ill. App. Ct. Mar. 12, 2015) ("Continued employment constitutes adequate consideration for a post-employment covenant not to compete."); *see also Lawrence & Allen, Inc. v. Cambridge Human Resource Grp., Inc.*, 685 N.E.2d 434, 441 (Ill. App. Ct. 1997) (finding that continued employment for two years after signing a restrictive covenant constitutes adequate consideration for the covenant).

greater than is required for the protection of a legitimate business interest of the employer-promisee; (2) does not impose undue hardship on the employee-promisor, and (3) is not injurious to the public." *Id*. Additionally, an employer's "legitimate business interest" may be limited by "type of activity, geographical area, and time." *Id*. at 397. These factors all contribute to a covenant's "reasonableness," however they are not "weighted," meaning that "there is no prescribed method by which more or less weight is assigned to each factor." *Id*. at 401. Rather, the test is a flexible one, designed to take into account the totality of the circumstances of each case. *Id*. at 400-01 (noting the lack of an "inflexible formula"); *see also Lawrence & Allen, Inc. v. Cambridge Human Resource Grp., Inc.*, 685 N.E.2d 434, 441 (Ill. App. Ct. 1997) (holding that reasonableness "necessarily turns on the facts and circumstances of each case").

Under the first factor, employers have a legitimate business interest in their confidential information and customers. *Reliable Fire Equip. Co.*, 965 N.E.2d at 401; *see also A-Tech Computer Servs., Inc. v. Soo Hoo*, 627 N.E.2d 21, 26 (Ill. App. Ct. 1993) (finding a protectable interest in employer's client base). Thus, a restrictive covenant that becomes effective after the termination of employment "may be enforceable as reasonably necessary to protect the employer's good will." *Arthur J. Gallagher & Co. v. Roi*, No. 14-0786, 2015 WL 1143167, at *12 (Ill. App. Ct. Mar. 12, 2015). Illinois courts have discussed various considerations in determining an employer's legitimate business interest in enforcing a restrictive covenant. *See Reliable Fire Equip. Co.*, 965 N.E.2d at 401-02 (reviewing various "tests" courts have used to determine the parameters of a "legitimate business interest"). However, no one test is dispositive, but rather the legitimate business interest inquiry requires a balancing of factors such as "the near-permanence of customer relationships, the employee's acquisition of confidential information through his employment, and time and place restrictions." *Id*. at 403; *see also A-*

13

*Tech Computer Servs.*, 627 N.E.2d at 400 (considering such factors as the length of client relationships, the degree of investment in the client, and the extent of personal contact by the employee, among others). Another relevant factor is the nature of the employer's business. *See Reliable Fire Equip. Co.*, 965 N.E.2d at 402-03.

The second factor considers whether the covenant imposes undue hardship on the former employee. Activity restrictions, such as those against soliciting customers, "should be narrowly tailored to protect only against activities that threaten the employer's interest." *Lawrence & Allen, Inc.*, 685 N.E.2d at 442. Thus, a non-solicitation clause that "prohibits an employee from soliciting *any* of the employer's clients is less likely to be upheld as a reasonable restraint on trade" than "a covenant not to solicit which prohibits an employee only from soliciting clients with which the employee has had contact [with] while he or she was employed with the employer." *Id.*; *see also McRand, Inc v. Van Beelen*, 486 N.E.2d 1306, 1315-16 (Ill. App. Ct. 1985) ("The trial court may properly enjoin only activities involving the employer's customers with whom the former employees had been involved during their employment.").

The third factor considers injury to the public. In highly competitive industries, courts are less likely to find an injury to the public when imposing a restrictive covenant. *See Millard Maint. Serv. Co. v. Bernero*, 566 N.E.2d 379, 388 (Ill. App. Ct. 1990) (finding no injurious effect upon the public where the public was still free to seek the services of the employee's new employer).

Additionally, while geographic limitations are considered, they are not required for a non-solicitation provision to be found reasonable. *See Lawrence & Allen, Inc.*, 685 N.E.2d at 441 (holding that non-solicitation provisions do not require geographical limitations). Restrictive covenants lasting two to five years' post-employment have been upheld as

reasonable. *See Lawrence & Allen, Inc.*, 685 N.E.2d at 441 (finding a two-year time restriction reasonable); *Scheffel Fin. Servs., Inc. v. Heil*, 16 N.E.3d 385, 392 (Ill. App. Ct. 2014) (finding a five-year time restriction reasonable). Additional considerations are whether the employer has acted in bad faith and whether the employee voluntarily left. *See Arthur J. Gallagher & Co.*, 2015 WL 1143167, at *12 (finding an employer's termination of defendant in bad faith precluded the application of defendant's restrictive covenant).

Here, Defendants argue that the non-solicitation provision is "unreasonable, void and unenforceable." Def. Opp'n at 23. Specifically, Defendants claim that the provision is not limited to "customers with whom the Individual Defendants had contact [with] during their employment with Menasha;" and the prohibition concerning mere "knowledge" of Menasha's clients is fatally overbroad. *Id.* at 24-25.

Defendants' arguments as to the theoretical problems with the non-solicitation provision do not reflect the actual circumstances of this case. Plaintiff is not seeking to prevent the Individual Defendants from soliciting a Menasha customer with whom the Individual Defendants merely had incidental contact. If the theoretical issues raised by Defendants actually existed, the Court would be inclined to use its discretion and "blue pencil" the non-solicitation provision to ensure that it was reasonable. *See Trailer Leasing Co.*, 1996 WL 392135, at *1.

Here, Menasha seeks to enforce the non-solicitation provision solely as to one customer, Mondelez. The three Individual Defendants worked directly with Mondelez. Defendant Evans was a Key Account Manager and main liaison to Mondelez, Defendant Cordero was a Category Project Manager, and Defendant Stiles was an Account Manager. Additionally, Menasha contends that in these roles, each of the Individual defendants had access to confidential

information[9] regarding the client.  Indeed, it seems that Pratt valued the Individual Defendants specifically because of the relationship they developed with Mondelez while working at Menasha.  *See Dam, Snell & Taveirne, Ltd. v. Verchota*, 754 N.E.2d 464, 470 (Ill. App. Ct. 2001) (taking into account that employee had "gained specific knowledge of the needs and services required by [the] client[]" while servicing the client on behalf of plaintiff, putting the employee "in a unique position to provide such services upon termination of employment").  Additionally, there is no allegation of bad faith on the part of Plaintiff, and the Individual Defendants voluntarily left Menasha; they were not forced to leave.  Currently, both Plaintiff and Pratt are at a crucial juncture where each is attempting to secure a new vendor contract with Mondelez.

Thus, the totality of the circumstances here makes non-solicitation provision reasonable and enforceable.  Menasha has a legitimate business interest in protecting its goodwill and its reputation with Mondelez.  The non-solicitation provision applies to only a single customer for a period of 18 months, less time than has been deemed reasonable by other Illinois courts.  *See Lawrence & Allen, Inc.*, 685 N.E.2d at 441 (finding a two-year non-solicitation provision reasonable); *Scheffel Fin. Servs., Inc.*, 16 N.E.3d at 392 (finding a five-year non-solicitation provision reasonable).   In fact, courts in Illinois have upheld non-solicitation provisions encompassing a much broader range of customers.  *See Scheffel Fin. Servs., Inc.*, 16 N.E.3d at 392 (upholding preliminary injunction in which former employee could not solicit any clients serviced by his former employer rather than just those clients the employee personally served).

---

[9] As discussed in note 1, *supra*, the Court has ordered expedited discovery as to Plaintiff's confidential information allegedly misappropriated by the Individual Defendants.  However, Plaintiff has established a reasonable likelihood of success in demonstrating that the Individual Defendants had access to confidential information regarding Mondelez while working with Menasha.

The nature of Menasha's business is such that the Individual Defendants had a long-term and established relationship with Mondelez. *Lawrence & Allen, Inc.*, 685 N.E.2d at 444 (analyzing whether the industry engendered long-term relationships with customers in determining whether plaintiff had a legitimate business interest in its customers). During their time at Menasha, the Individual Defendants were in a position to acquire specialized knowledge and confidential information concerning Mondelez. In short, the Individual Defendants played an important role in Menasha's business relationship with Mondelez. In sum, there is a reasonable likelihood that Plaintiff will succeed in demonstrating a valid and enforceable non-solicitation agreement, which the Individual Defendants are violating.

Moreover, although past actions cannot be remedied through injunctive relief, such facts can be considered as to the strength of Plaintiff's proof. Here, Evans has apparently already violated the non-solicitation provision by attending a meeting with Mondelez on behalf of Pratt. Stiles failed to inform Plaintiff that he was not providing the CIP information to Mondelez. And both Stiles and Cordero submitted declarations to the Court claiming that they were shocked to learn of the non-solicitation agreements in December 2016 when both had been provided with the same agreements less than a month before. D.E. 33-1 & 33-3. As noted, the non-solicitation provision also prohibits contact with Mondelez. Although Defendants argue that the no-contact provision is overbroad and unenforceable, Illinois courts have upheld such a prohibition. *See Scheffel Fin. Servs., Inc.*, 16 N.E.3d at 392 (upholding injunction that enforced a no contact provision of non-solicitation clause). Thus, Plaintiff has met its burden of demonstrating the first factor – a likelihood that it will succeed on the merits.

Irreparable Harm

17

As to irreparable harm, the Third Circuit requires a plaintiff to establish a "clear showing of immediate irreparable injury." *ECRI v. McGraw-Hill Inc.*, 809 F.2d 223, 226 (3d Cir. 1987). "Irreparable injury" requires a plaintiff to "demonstrate potential harm which cannot be redressed by a legal or equitable remedy following a trial." *Instant Air Freight Co.*, 882 F.2d at 801; *ECRI*, 809 F.2d at 226 ("The requisite feared injury or harm must be ... of a peculiar nature, so that compensation in money cannot atone for it.") (internal quotation marks omitted).  Thus, a "preliminary injunction must be the only way of protecting the plaintiff from harm." *Executive Home Care Franchising LLC v. Marshall Health Corp.*, No. 15-760, 2015 WL 1422133, at *3 (D.N.J. Mar. 26, 2015).  "Immediacy" mandates that injunctive relief "may not be used simply to eliminate a possibility of a remote future injury, or a future invasion of rights." *Holiday Inns of Am. v. B & B Corp.*, 409 F.2d 614, 618 (3d Cir. 1969).  Thus, the harm required must be more than "possible," it must be "likely." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

"Generally, the loss of good will, the disclosure of confidential and proprietary information, and the interference with customer relationships may be the basis for a finding of irreparable harm." *Laidlaw, Inc. v. Student Transp. of Am., Inc.*, 20 F. Supp. 2d 727, 766 (D.N.J. 1998); *see also Kos Pharm., Inc.*, 369 F.3d at 726 ("Grounds for irreparable injury include loss of control of reputation, loss of trade, and loss of good will."); *A-Tech Computer Servs.*, 627 N.E.2d at 401 (finding loss of competitive position and customer goodwill "intangible" and "incapable of being measured").  Additionally, "[w]here an employee solicits customers of his former employer on behalf of his new employer, there is irreparable harm. *Trico Equip., Inc. v. Manor*, No. 08-5561, 2009 WL 1687391, at *8 (D.N.J. June 15, 2009).  However, if a former

18

employee has already disclosed confidential information, "the harm might be irreparable, but it is not immediate." *Id.*

Defendants argue that Plaintiff cannot show irreparable harm. Def. Supp. Br. at 2. Even if Plaintiff can prove that there was irreparable harm, Defendants argue, "any purported harm has already occurred" because Mondelez's RFP process has now concluded. *Id.* at 1. Defendants also contend that "Plaintiff is unable to demonstrate irreparable harm given that any purported injury is compensable by monetary damages." *Id.*

Plaintiff alleges that Defendants have already demonstrated misconduct, suggesting that injunctive relief is necessary to guard against further violations of the agreements.[10] Pl. Supp. Br. at 1. Additionally, Plaintiff points to the language in the agreements which acknowledge that any breach would cause irreparable harm. *Id.* Further, Plaintiff contends that monetary relief will not be sufficient in this case since "multiple employees possess[] both goodwill and stolen business information, and [the] RFP involve[es] multiple bidders for a complex multi-year contract." *Id.* at 2. Thus, in the absence of injunctive relief, "Menasha will be left without a satisfactory remedy." *Id.*

Defendants correctly state that the standard used for irreparable harm no longer presumes the harm, but instead requires Plaintiff to demonstrate that irreparable harm is likely in the absence of an injunction. *See Winter*, 555 U.S. at 20. In response, Plaintiff points to the language of the agreement which states that a breach will cause irreparable harm. While this is a

---

[10] The Court notes that Plaintiff's argument is premised in part on the assumption that the Individual Defendants took confidential information from Menasha and used it to further Pratt's interests. While this may be the case, it is not the basis for a finding of irreparable harm. The Court has ordered expedited discovery to determine whether the Individual Defendants took Plaintiff's confidential information and then used it on behalf of Pratt. That being said, Plaintiff has shown a reasonable likelihood of demonstrating that the Individual Defendants had access to Menasha's confidential information concerning Mondelez while employed with Plaintiff. This scenario is a relevant consideration in gauging irreparable harm.

factor for the Court to consider, the Court must make its own determination of whether there has been irreparable harm. *See Laidlaw, Inc.*, 20 F. Supp. 2d at 766 (holding that "[a] contractual provision simply cannot act as a substitute for a finding by this [c]ourt that it would be appropriate to invoke its equitable powers" and "the [c]ourt must fully apply the same test for irreparable harm that it would were the clause not to exist").

Here, Plaintiff has adequately demonstrated that the Individual Defendants' actions will cause irreparable harm due to reputational harm and damage to its goodwill with Mondelez. "Goodwill" consists of "the advantages a business has over competitors as a result of its name, location and reputation." *Health Prof'ls, Ltd. v. Johnson*, 791 N.E.2d 1179, 1190 (Ill. App. Ct. 2003).

First, Menasha has already demonstrated a likelihood that its goodwill with Mondelez was damaged when Stiles did not present the CIP information. Although this conduct is in the past and cannot be remedied by injunctive relief, it does lend support to Menasha's argument that it will continue to suffer a loss of goodwill if the Individual Defendants are permitted to work for Pratt on the Mondelez account. The Individual Defendants were not tangentially involved with Mondelez while working for Menasha. All three were intimately involved -- Evans as a Key Account Manager and main liaison to the customer, Cordero as a Category Project Manager, and Defendant Stiles as an Account Manager. All three Individual Defendants were the point persons for Menasha as to Mondelez. To now have these three key individuals working for Menasha's direct competitor, Pratt, on the very customer (Mondelez) immediately after leaving Menasha will continue to erode Menasha's goodwill and reputation with Mondelez. *See HR Staffing Consultants LLC v. Butts*, 627 F. App'x 168, 174 (3d Cir. 2015) (finding irreparable harm when an employee "transferred his loyalties" to a new employer and therefore would be

20

willing to disclose damaging information or allow his knowledge to influence his actions); *Trico Equip., Inc.*, 2009 WL 1687391, at * 9 ("[Defendant] has contacted his former customers and will continue to do so unless restrained. He [and his new employer] benefit from the confidential information he learned working for [plaintiff]. There is no monetary compensation that can adequately measure their loss.").

Injunctive relief is also appropriate because of the practical difficulties in establishing causation and damages. *See Instant Air Freight Co.*, 882 F.2d at 802 (using "the difficulty of proving damages with reasonable certainty" as a factor in determining irreparable harm); *Mass. Mut. Life Ins. Co. v. Ass. Dry Goods Corp.*, 786 F. Supp. 1403, 1417 (N.D. Ind. 1992) (finding irreparable harm due to "the extreme difficulty of establishing both causation and amount of damages"). Damages will be difficult to quantify because it will require a showing that Mondelez provided work to Pratt because of the Individual Defendants. Thus, this is not a case in which there are discrete accounts that will be easy to quantify if lost. *See, e.g., Chubb Ina Holdings Inc. v. Chang*, No. CV 16-2354, 2017 WL 499682, at *12 (D.N.J. Feb. 7, 2017) (finding that an insurance company's failure to renew policies with multiple clients were "readily quantified in monetary damages"). In fact, Pratt frankly admits that it hired the Individual Defendants to enhance its relationship with Mondelez. The amount of Mondelez business Menasha loses to Pratt because the Individual Defendants are now with Pratt will be difficult to quantify. Plaintiff will likely claim that all additional business is due to the Individual Defendants. Pratt will likely respond that any increase is due to their superior performance. The issue becomes even murkier when Mondelez issues its new vendor contracts. For example, how much additional work will Pratt gain because the Individual Defendants have been working on the Mondelez account during 2017, *i.e.*, during the period before the new vendor contracts

begin? When there is difficulty in "proving damages with reasonable certainty," or "procuring a suitable substitute performance by means of money awarded as damages," injunctive relief is appropriate. *Apollo Techs. Corp.*, 805 F. Supp. at 1210.

Balance of Interests

The third factor in the preliminary injunction analysis requires a court to balance the relative harms to the parties. A court must consider whether "the relative harm which will be visited upon the movant by the denial of injunctive relief is greater than that which will be sustained by the party against whom relief is sought." *Atlantic City Coin & Slot Serv. Co., Inc. v. IGT,* 14 F. Supp. 2d 644, 657 (D.N.J. 1998).

Here, the balance of interests weighs in favor of granting Plaintiff injunctive relief. Defendants claim that the balance of interests favors the Individual Defendants because Pratt may not continue to employ the Individual Defendants if they cannot work on the Mondelez account. At the outset, the Court notes that this argument appears to support Plaintiff's position – the apparent value Pratt assigns to the Individual Defendants is based upon the relationship that they developed with Mondelez while working for Menasha. Further, the Individual Defendants themselves voluntarily chose to leave Menasha to go to a direct competitor, thus they "brought any hardship upon [themselves]." *HR Staffing Consultants LLC*, 627 F. App'x at 173. In any event, the Court finds Defendants' arguments unavailing. The injunction sought does not prevent the Individual Defendants from working in the industry. Nor does it prevent the Individual Defendants from working for Pratt. It solely applies to Mondelez. If Pratt decides to terminate the Individual Defendants because they cannot work on the Mondelez account, that is Pratt's decision. The Court is certainly not requiring it. Moreover, any enforcement of a restrictive covenant is going to hamper the former employee's ability to work to some degree.

On the other hand, Menasha will suffer significantly if the Individual Defendants continue to erode their goodwill. Thus, the balance of interests favors Menasha.

Public Interest

The final equitable factor a court must consider is "the public interest in the grant or denial of the requested relief, if relevant." *Atlantic City Coin & Slot Serv. Co.,* 14 F. Supp. 2d at 657. "Judicial enforcement of non-competition provisions of employment contracts serves the public interest by promoting stability and certainty in business and employment relationships." *Wright Med. Tech., Inc. v. Somers,* 37 F. Supp. 2d 673, 684 (D.N.J. 1999). Additionally, "[a]s a practical matter, if a plaintiff demonstrates both a likelihood of success and irreparable injury, it almost always will be the case that the public interest will favor the plaintiff." *Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F. 3d 1421, 1427 n.8 (3d Cir. 1994).

In the present case, there would be no harm to the public interest in prohibiting the Individual Defendants from servicing Mondelez on behalf of Pratt for eighteen-months. Public interest is served by enforcing legitimate and reasonable non-solicitation clauses. *See Nat'l Reprographics, Inc. v. Strom*, 621 F. Supp. 2d 204, 229 (D.N.J. 2009) ("[T]he public has a great interest in upholding and enforcing freely negotiated contracts entered into between employees and their employers"). Since the non-solicitation clauses here are legitimate and reasonable, the public interest is served by enforcing them.

## V.    CONCLUSION

For the foregoing reasons, Plaintiff's motion for a preliminary injunction is granted. The Individual Defendants are prohibited from directly or indirectly soliciting, servicing, or having business contact with Mondelez for an eighteen-month period from the date of their departure of Menasha. An appropriate order accompanies this opinion.

Dated: February 15, 2017

John Michael Vazquez, U.S.D.J.